FILED
CLERK, U.S. DISTRICT COURT

JUL - 2 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     June 2019 Grand Jury

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, | CR No. **CR 19-00393-JAK** |
| 12          Plaintiff, | I N D I C T M E N T |
| 13          v. | [21 U.S.C. § 846: Conspiracy to Distribute, and to Possess with Intent to Distribute, Controlled Substances; 21 U.S.C. § 963: Conspiracy to Export Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C): Distribution of Controlled Substances; 18 U.S.C. § 2(a): Aiding and Abetting] |
| 14 VINCENT YEN TEK CHIU, aka "El Chino," | |
| 15      "Chase," "Tiger," | |
| 16      "TigerOfSweden," "TigerOfMexico," | |
| 17      "ControllerCard," "Thomas," | |
| 18      "Auctioned," and "Immortalplanet," | |
| 19 FNU LNU, aka "Nica," | |
| 20      "SpeedShift," and "themagnificent," | |
| 21 ANTHONY LOUIS LAM, aka "Jonny" and | |
| 22      "Mike," THANH HAI TRAN, | |
| 23   aka "Thomas," HENRY LIU, | |
| 24   aka "Randy," ASHOT ABARYAN, | |
| 25 CRISTIAN RAUL GASTELUM-SANCHEZ, RAUL ARTURO GASTELUM-BENITEZ, | |
| 26 ZLATKO MANDARIC, BOJAN TOMCIC, | |
| 27 KHONSAVANH VORACHACK, aka "Buddy" and | |
| 28      "Kevin," | |

```
 1  MARLENE WHITMORE,
    FNU LNU,
 2     aka "Joe" and
          "Canadafriend," and
 3  FNU LNU,
       aka "Andrea Cummings,"
 4
               Defendants.
 5
```

 6       The Grand Jury charges:

 7                          COUNT ONE

 8                     [21 U.S.C. § 846]

 9                     [ALL DEFENDANTS]

10  A.   OBJECT OF THE CONSPIRACY

11       Beginning on a date unknown and continuing until on or about

12  July 2, 2019, in Los Angeles County, Orange County, and Ventura

13  County, within the Central District of California, in the country of

14  Canada, and elsewhere, defendants VINCENT YEN TEK CHIU, also known as

15  ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden,"

16  "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and

17  "Immortalplanet" ("CHIU"); First Name Unknown Last Name Unknown ("FNU

18  LNU"), aka "Nica," "SpeedShift," and "themagnificent" ("NICA");

19  ANTHONY LOUIS LAM, aka "Jonny" and "Mike" ("LAM"); THANH HAI TRAN,

20  aka "Thomas" ("TRAN"); HENRY LIU, aka "Randy" ("LIU"); ASHOT ABARYAN

21  ("ABARYAN"); CRISTIAN RAUL GASTELUM-SANCHEZ ("GASTELUM-SANCHEZ");

22  RAUL ARTURO GASTELUM-BENITEZ ("GASTELUM-BENITEZ"); ZLATKO MANDARIC

23  ("MANDARIC"); BOJAN TOMCIC ("TOMCIC"); KHONSAVANH VORACHACK, aka

24  "Buddy" and "Kevin" ("VORACHACK"); MARLENE WHITMORE ("WHITMORE"); FNU

25  LNU, aka "Joe" and "Canadafriend" ("JOE"); and FNU LNU, aka "Andrea

26  Cummings" ("CUMMINGS"); and others known and unknown to the Grand

27  Jury, conspired with each other to knowingly and intentionally

28  distribute and to possess with intent to distribute at least five

                                  2

kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.    Defendants CHIU and NICA, and others known and unknown, would arrange to purchase bulk quantities of cocaine in the United States for importation into Canada for re-sale in exchange for currency or bulk quantities of MDMA.

2.    Defendants CHIU and JOE, and others known and unknown, would arrange for the transportation of MDMA from Canada into the United States in exchange for cocaine.

3.    Defendants CHIU, NICA, JOE, and CUMMINGS, and others known and unknown, would arrange for the transportation of cocaine from the United States to Canada for further distribution.

4.    Defendants CHIU and NICA, and others known and unknown, would provide code names, telephone numbers, and serial numbers on bills of currency to co-conspirators to use as a "token" for identification purposes during the exchange of controlled substances in the United States and during the exchange of currency in Canada as payment for the controlled substances.

5.    Defendant LIU and others known and unknown would test the quality of the cocaine in the United States that would eventually be transported to Canada for further distribution.

6.   Defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ, and others known and unknown, would deliver cocaine to co-conspirators in the United States for eventual transportation to Canada for further distribution.

7.   Defendants LAM, ABARYAN, MANDARIC, TOMCIC, VORACHACK, and WHITMORE, and others known and unknown, would pick up cocaine from co-conspirators in the United States for eventual transportation to Canada for further distribution.

8.   Defendant VORACHACK and others known and unknown would deliver MDMA which had been transported from Canada to co-conspirators in the United States for further distribution.

9.   Defendants CHIU and TRAN, and others known and unknown, would deliver currency to co-conspirators in Canada as payment for controlled substances, which had been exchanged in the United States.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants CHIU, NICA, LAM, TRAN, LIU, ABARYAN, GASTELUM-SANCHEZ, GASTELUM-BENITEZ, MANDARIC, TOMCIC, VORACHACK, WHITMORE, JOE, and CUMMINGS, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, Orange County, and Ventura County, within the Central District of California, in the country of Canada, and elsewhere, including, but not limited to, the following:

Attempted Purchase of 50 Kilograms of Cocaine for Resale

1.   On or about January 18, 2018, using coded language in a series of text messages, defendant CHIU arranged to meet with an individual he believed to be a money courier, but who was, in fact, an undercover agent ("UC1"), in Langley, British Columbia, Canada, in

4

order to deliver payment for 50 kilograms of cocaine, which UC1's associate was tasked with delivering to defendant CHIU's associate in the Los Angeles, California area for further distribution in Canada.

2.   On or about January 19, 2018, using coded language in a series of text messages, defendant CHIU agreed to provide UC1 $963,300 in Canadian currency for 50 kilograms of cocaine.

3.   On or about January 19, 2018, in Compton, California, a co-conspirator, acting on behalf of defendant CHIU, met with an individual he believed to be a drug courier, but who was in fact an undercover agent ("UC2"), in order to pick up 50 kilograms of cocaine.

4.   On or about January 19, 2018, in Langley, British Columbia, Canada, defendant CHIU and a co-conspirator met with UC1 in order to coordinate the exchange of cash and cocaine between defendant CHIU's organization and UC1's organization.

<u>Payment of Approximately $100,000 in Canadian Currency as Down Payment for Cocaine</u>

5.   On or about January 21, 2018, using coded language in a text message, defendant CHIU told UC1 that he needed a total of 150 kilograms of cocaine for further distribution in Canada.

6.   On or about January 23, 2018, using coded language in a text message, defendant CHIU offered to give UC1's organization $100,000 in Canadian currency as a down payment for 50 kilograms of cocaine.

7.   On or about January 26, 2018, using coded language in a text message, defendant CHIU told UC1 that he had arranged to meet UC1's associate the following day to give the associate $100,000 in Canadian currency as down payment for 50 kilograms of cocaine.

8.   On or about January 27, 2018, using coded language in a text message, defendant CHIU told UC1 that he had missed the meeting with UC1's associate during which he was supposed to give the associate $100,000 in Canadian currency.

9.   On or about February 1, 2018, in Burnaby, British Columbia, Canada, a co-conspirator, acting on behalf of defendant CHIU, met with an individual he believed to be UC1's associate, but who was, in fact, an undercover agent ("UC3"), and gave UC3 approximately $99,070 in Canadian currency and $20 in U.S. currency as down payment for 50 kilograms of cocaine.

10.   On or about February 14, 2018, using coded language in a text message, defendant CHIU asked UC1 if UC1 could deliver cocaine to CHIU's associate in Seattle, Washington for eventual transportation to Canada, where it would be resold.

11.   On or about February 18, 2018, using coded language in a text message, defendant CHIU told UC1 that he was trying to find a courier who could pick up cocaine from UC1's organization.

<u>Seizure of Approximately 93 Kilograms of Cocaine and Heroin</u>

12.   On or about February 20, 2018, in Compton, California, defendant ABARYAN met a co-conspirator at a warehouse to conduct a drug transaction.

13.   On or about February 21, 2018, in Ventura, California, defendant ABARYAN possessed with the intent to distribute approximately 92.2 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 1.01 kilograms of a mixture and substance containing a detectable amount of heroin.

14.   On or about February 23, 2018, using coded language in a text message, defendant CHIU told UC1 that law enforcement officers

1 | seized cocaine from defendant ABARYAN, who was working as a courier
2 | for defendant CHIU.

3 | 15.  On or about May 2, 2018, using coded language in a series
4 | of text message, defendant CHIU asked UC1 if UC1's organization could
5 | provide 50 kilograms of cocaine to defendant CHIU for further
6 | distribution in Canada.

7 | Attempted Purchase of 32 Kilograms of Cocaine for Distribution

8 | 16.  On or about May 25, 2018, using coded language in a series
9 | of text messages, defendant CHIU ordered from an individual he
10 | believed to be UC1's boss, but who was, in fact, cooperating with law
11 | enforcement ("CHS1"), 70 kilograms of cocaine for further
12 | distribution in Canada.

13 | 17.  On or about May 25, 2018, using coded language in a text
14 | message, defendant CHIU asked CHS1 if his courier could pick up 30
15 | kilograms of cocaine and then pick up the remaining 40 kilograms of
16 | cocaine soon after.

17 | 18.  On or about May 26, 2018, using coded language in a text
18 | message, defendant CHIU told CHS1 that his courier would transport
19 | the cocaine he received from CHS1's organization from the United
20 | States to Alberta, Canada.

21 | 19.  On or about May 26, 2018, using coded language in a text
22 | message, defendant CHIU told CHS1 that he would be ready to provide
23 | payment for cocaine to CHS1's organization in Vancouver.

24 | 20.  On or about May 28, 2018, using coded language in a text
25 | message, defendant CHIU told CHS1 that he had arranged to meet with
26 | CHS1's associate the following day to discuss the upcoming drug
27 | transaction.

28 |

21.   On or about May 29, 2018, in Burnaby, British Columbia, Canada, defendant CHIU met with an individual he believed to be CHS1's associate, but who was, in fact, an undercover agent ("UC4"), to discuss payment for the cocaine CHS1's organization was scheduled to deliver to defendant CHIU's organization for further distribution in Canada.

22.   On or about May 31, 2018, using coded language in a text message, defendant CHIU instructed CHS1 to make sure that the cocaine was wrapped twice in heat-sealed plastic wrapping, and told CHS1 to have CHS1's drug courier get a new telephone number for each drug delivery.

23.   On or about June 3, 2018, using coded language in a series of text messages, defendant CHIU offered to pay CHS1 $1,375,146 in Canadian currency for 55 kilograms of cocaine because he had already given CHS1's organization approximately $100,000 in Canadian currency as a down payment.

24.   On or about June 4, 2018, using coded language in a text message, defendant CHIU told CHS1 that he would give CHS1's associate half of the payment owed for 55 kilograms of cocaine.

25.   On or about June 4, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that the drug transaction had not been completed because defendant CHIU did not have the cash payment ready to be delivered to CHS1's associate in Vancouver, but offered to deliver payment in Mexico.

26.   On or about June 4, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that he had given CHS1's organization $100,000

in Canadian currency as a down payment to show that he was acting in good faith in his ongoing negotiations with CHS1.

27.   On or about June 15, 2018, using coded language in a text message, defendant CHIU told CHS1 that he wanted to purchase only 40 kilograms of cocaine for further distribution in Canada.

28.   On or about June 15, 2018, using coded language in a text message, defendant CHIU asked a co-conspirator if the co-conspirator had a worker who could pick up cocaine on defendant CHIU's behalf in the Los Angeles, California area.

29.   On or about June 18, 2018, using coded language in a text message, defendant CHIU sent CHS1 a code name, a coded phone number, and a serial number on a bill of currency for a co-conspirator who was to pick up cocaine from CHS1's organization on behalf of defendant CHIU.

30.   On or about June 20, 2018, using coded language in a text message, defendant CHIU told CHS1 that he would deliver approximately $665,000 in Canadian currency to CHS1's organization the following day as a partial payment for cocaine.

31.   On or about June 21, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator asking if the co-conspirator could order an additional 60 kilograms of high quality cocaine for $20,500 per kilogram.

32.   On or about June 21, 2018, in Vancouver, defendant CHIU met with UC3 and UC4, who were posing as CHS1's associates, to give UC3 and UC4 payment for cocaine, but then refused to provide the payment.

33.   On or about June 21, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator

warning defendant CHIU that the co-conspirator believed CHS1 was working for the Drug Enforcement Administration.

<u>Test of Cocaine Sample to Ensure Quality</u>

34.  On or about July 10, 2018, using coded language in a text message, defendant CHIU told CHS1 that he wanted to try again to purchase cocaine from CHS1's organization for further distribution in Canada.

35.  On or about July 12, 2018, using coded language in a series of text messages, defendant CHIU told CHS1 that he wanted to obtain approximately 30 kilograms of high quality cocaine from CHS1's organization.

36.  On or about July 13, 2018, using coded language in a series of text messages, defendant CHIU asked CHS1 if defendant CHIU's associate could test one kilogram of cocaine from CHS1's organization to ensure that it was high quality.

37.  On or about July 14, 2018, using coded language in a text message, defendant CHIU gave CHS1 a code name, a coded telephone number, and a serial number on a bill of currency for defendant LIU, who would test cocaine from CHS1's organization.

38.  On or about July 17, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU would allow CHS1's associate to count the payment for cocaine in Vancouver while CHS1's associate in the Los Angeles, California area delivered cocaine to defendant CHIU's associate, but defendant CHIU would not release the payment to CHS1's associate until the cocaine delivery was completed.

39.  On or about July 18, 2018, in West Covina, California, defendant LIU met with an individual he believed to be CHS1's

associate, but who was, in fact, cooperating with law enforcement
("CHS2"), in order to test a sample of cocaine on behalf of defendant
CHIU.

40.   On or about July 18, 2018, using coded language in a text
message, defendant CHIU confirmed the serial number that defendant
LIU was supposed to use when he met with CHS1's associate to test a
sample of cocaine.

41.   On or about July 18, 2018, using coded language in a text
message, defendant CHIU asked CHS1 how much cocaine CHS1 had and told
CHS1 that defendant CHIU could purchase 30 kilograms of cocaine at
that moment.

42.   On or about July 18, 2018, using coded language in a series
of text messages, defendant CHIU explained to CHS1 that defendant
CHIU thought CHS1's associate would give defendant LIU one kilogram
of cocaine to take home to test because defendant LIU was not able to
test on the spot whether the sample of cocaine was high quality.

43.   On or about July 18, 2018, using coded language in a text
message, defendant CHIU asked CHS1 to guarantee that the cocaine
CHS1's organization would sell to defendant CHIU would be high
quality.

44.   On or about July 20, 2018, during a recorded telephone
call, defendant CHIU told CHS1 (who was posing as an employee of
CHS1) that when defendant LIU tested a sample of cocaine provided by
CHS1's associate, the brand of cocaine was not what defendant CHIU
expected.

Purchase of Approximately 33 Kilograms of Sham Cocaine for Resale

45.   On or about July 22, 2018, using coded language in a text
message, defendant CHIU told UC1 that defendant CHIU would give UC1's

organization $355,244 in Canadian currency as an upfront payment for a cocaine delivery.

46. On or about July 23, 2018, using coded language in a text message, defendant CHIU gave UC1 a code name, a coded telephone number, and a serial number on a bill of currency for defendant LAM, who was to pick up cocaine from UC1's associate in the Los Angeles, California area on behalf of defendant CHIU.

47. On or about July 23, 2018, using coded language in a text message, defendant CHIU gave UC1 a code name and a coded telephone number for defendant TRAN, who was to deliver payment for cocaine in Vancouver.

48. On or about July 24, 2018, in Burnaby, British Columbia, Canada, defendant TRAN met with UC3, who was posing as UC1's associate, and gave UC3 approximately $355,110 in Canadian currency as an upfront payment for cocaine, on behalf of defendant CHIU.

49. On or about July 26, 2018, in Pomona, California, defendant LAM met with an individual he believed was UC1's associate, but who was, in fact, cooperating with law enforcement ("CHS3"), to pick up approximately 33 kilograms of a substance defendant LAM believed to be cocaine, on behalf of defendant CHIU.

50. On or about July 26, 2018, in Los Angeles, California, defendant LAM possessed with the intent to distribute approximately 33 kilograms of a substance he believed to be cocaine.

51. On or about July 26, 2018, in Burnaby, British Columbia, Canada, defendants CHIU and TRAN met with UC3, who was posing as UC1's associate, and gave UC3 approximately $355,000 in Canadian currency as payment for the suspected cocaine defendant LAM picked up.

52.   On or about July 27, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU's co-conspirators asked for their money back because law enforcement officers seized what defendant CHIU believed was 33 kilograms of cocaine from defendant LAM.

53.   On or about July 27, 2018, using coded language in a text message, defendant CHIU asked CHS1 to return half of the cash defendant CHIU had given to UC3 as payment for cocaine until defendant CHIU received a police report to verify that 33 kilograms of cocaine had been seized from defendant LAM.

54.   On or about July 30, 2018, using coded language in a text message, defendant CHIU complained to a co-conspirator that CHS1 refused to return any money until CHS1 saw proof that the cocaine had been seized by law enforcement.

55.   On or about August 2, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator who warned defendant CHIU that defendant CHIU should be careful when trying to find information about defendant LAM's arrest because there may be a larger investigation into their organization.

56.   On or about August 8, 2018, using coded language in a text message, defendant CHIU told CHS1 that he owed his co-conspirators $400,000 for the seized cocaine, and said that defendant CHIU could sell enough cocaine to pay back the money owed if CHS1 could provide the cocaine to defendant CHIU.

57.   On or about August 9, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU had a drug buyer who would pre-pay for 20 kilograms of cocaine at a time for a total of 100 kilograms of cocaine.

58.  On or about August 9, 2018, using coded language in a text message, defendant CHIU told a co-conspirator that CHS1 did not want to return payment until CHS1 had proof that CHS1's organization was at fault for the seizure of cocaine from defendant LAM.

59.  On or about August 23, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that CHS1's organization had to return half of the payment for the cocaine seized from defendant LAM, and that defendant CHIU wanted to continue conducting drug trafficking business with CHS1's organization.

<u>Seizure of 55 Kilograms of Cocaine and Heroin</u>

60.  On or about August 10, 2018, using coded language in a series of text message, defendant NICA relayed a message from defendant CHIU that defendant CHIU needed contact information and a serial number for an individual in Los Angeles, California who would help defendant CHIU arrange pick-ups and drop offs of controlled substances.

61.  On or about August 15, 2018, using coded language during a recorded telephone call, defendant CHIU told an individual he believed was a drug trafficker, but who was, in fact, cooperating with law enforcement ("CHS4"), to send defendant CHIU the serial number on a bill of currency for use during a drug transaction.

62.  On or about August 16, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS4 that defendant CHIU's associate would call CHS4 to arrange a time to drop off cocaine to CHS4.

63.  On or about August 27, 2018, using coded language during a recorded telephone call, a co-conspirator, acting on behalf of

14

defendant CHIU, told CHS4 that they would meet the following day to drop off controlled substances to CHS4 so that CHS4 could deliver the controlled substance to defendant CHIU's organization.

64.  On or about August 28, 2018, in Baldwin Park, California, defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ distributed approximately 24.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a detectable amount of heroin to CHS4.

65.  On or about August 28, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU asking how many kilograms of controlled substances defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ had distributed to CHS4.

66.  On or about August 28, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that defendant CHIU's drug courier would pick up the controlled substances which defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ had distributed to CHS4 the following week.

67.  On or about September 3, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that the same group that had distributed controlled substances to CHS4 on August 28, 2018 needed to distribute another 24 kilograms of controlled substances; defendant NICA further relayed that the additional 24 kilograms would also be delivered to defendant CHIU's courier.

68.  On or about September 6, 2018, in Baldwin Park, California, two co-conspirators distributed approximately 23 kilograms of a

mixture and substance containing a detectable amount of cocaine to CHS3, who was posing as a drug courier.

69.   On or about September 10, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that the organization in Los Angeles should get ready to drop off 55 kilograms of controlled substances to defendant CHIU's courier.

70.   On or about September 10, 2018, in Bakersfield, California, defendants MANDARIC and TOMCIC obtained approximately 47.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a detectable amount of heroin from CHS3 for the purpose of further distributing the controlled substances to defendant CHIU's organization in Canada.

71.   On or about September 11, 2018, in Barstow, California, defendants MANDARIC and TOMCIC possessed with the intent to distribute approximately 47.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a detectable amount of heroin.

Exchange of 24 Kilograms of MDMA for 12 Kilograms of Sham Cocaine

72.   On or about January 23, 2019, using coded language during a recorded telephone call, defendant CHIU offered to distribute MDMA to CHS1's organization in exchange for cocaine.

73.   On or about January 31, 2019, using coded language in a text message, defendant CHIU confirmed to CHS1 that he would send 24 kilograms of MDMA to CHS1.

74.   On or about February 6, 2019, using coded language in a text message, defendant CHIU told CHS1 that his co-conspirators would call CHS1's associate to arrange the delivery of MDMA.

75.   On or about February 18, 2019, using coded language during a recorded telephone call, defendant VORACHACK told UC1 that he (defendant VORACHACK) had 24 kilograms of MDMA to deliver to UC1 in exchange for 12 kilograms of cocaine.

76.   On or about February 19, 2019, using coded language in a text message, defendant CHIU sent CHS1 a serial number on a bill of currency for defendant VORACHACK to use to arrange the exchange of MDMA and cocaine.

77.   On or about February 20, 2019, using coded language during a recorded telephone call, defendant VORACHACK agreed to meet later that day with an individual he believed to be CHS1's associate, but who was, in fact, an undercover agent ("UC5"), in order to exchange MDMA for cocaine.

78.   On or about February 20, 2019, in Orange, California, defendant VORACHACK distributed approximately 23.92 kilograms of MDMA to UC5 and another undercover agent in exchange for approximately 12 kilograms of a substance that defendant VORACHACK believed was cocaine.

79.   On or about February 20, 2019, in Orange, California, defendant VORACHACK possessed with the intent to distribute approximately 12 kilograms of a substance he believed was cocaine.

80.   On or about February 20, 2019, using coded language in a recorded telephone call, defendant JOE asked defendant VORACHACK, who had agreed to cooperate with law enforcement, how many kilograms of

cocaine he (defendant VORACHACK) had picked up from UC5, to which defendant VORACHACK responded that it was 12 kilograms.

81.   On or about February 23, 2019, using coded language in a text message, defendant CUMMINGS directed defendant WHITMORE to deliver $3,000 to defendant VORACHACK in exchange for 12 kilograms of cocaine.

82.   On or about February 23, 2019, in Bellingham, Washington, defendant WHITMORE received approximately 12 kilograms of a substance she believed to be cocaine from defendant VORACHACK, who had agreed to cooperate with law enforcement, in exchange for $3,000.

83.   On or about February 23, 2019, using coded language in a text message, defendant CUMMINGS told defendant WHITMORE that she should have picked up 12 kilograms of cocaine, to which defendant WHITMORE confirmed that she picked up 12 kilograms.

84.   On or about February 23, 2019, in Edison, Washington, defendant WHITMORE possessed with the intent to distribute approximately 12 kilograms of a substance she believed was cocaine.

1

COUNT TWO

2

[21 U.S.C. § 963]

3

[ALL DEFENDANTS]

4

A.    OBJECT OF THE CONSPIRACY

5

Beginning on a date unknown and continuing until on or about

6

July 2, 2019, in Los Angeles County, Orange County, and Ventura

7

County, within the Central District of California, in the country of

8

Canada, and elsewhere, defendants VINCENT YEN TEK CHIU, also known as

9

("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden,"

10

"TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and

11

"Immortalplanet" ("CHIU"); First Name Unknown Last Name Unknown ("FNU

12

LNU"), aka "Nica," "SpeedShift," and "themagnificent" ("NICA");

13

ANTHONY LOUIS LAM, aka "Jonny" and "Mike" ("LAM"); THANH HAI TRAN,

14

aka "Thomas" ("TRAN"); HENRY LIU, aka "Randy" ("LIU"); ASHOT ABARYAN

15

("ABARYAN"); CRISTIAN RAUL GASTELUM-SANCHEZ ("GASTELUM-SANCHEZ");

16

RAUL ARTURO GASTELUM-BENITEZ ("GASTELUM-BENITEZ"); ZLATKO MANDARIC

17

("MANDARIC"); BOJAN TOMCIC ("TOMCIC"); KHONSAVANH VORACHACK, aka

18

"Buddy" and "Kevin" ("VORACHACK"); MARLENE WHITMORE ("WHITMORE"); FNU

19

LNU, aka "Joe" and "Canadafriend" ("JOE"); and FNU LNU, aka "Andrea

20

Cummings" ("CUMMINGS"); and others known and unknown to the Grand

21

Jury, conspired with each other to knowingly and intentionally export

22

from the United States at least five kilograms of a mixture and

23

substance containing a detectable amount of cocaine, a Schedule II

24

narcotic drug controlled substance, in violation of Title 21, United

25

States Code, Sections 953(a), 960(a)(1), (b)(1)(B)(ii).

26

27

28

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     The object of the conspiracy was to be accomplished, in
substance, through the means set forth in Section B, Paragraphs 1
through 9, of Count One, which are re-alleged and incorporated here.

C.   OVERT ACTS

     In furtherance of the conspiracy and to accomplish its object,
on or about the following dates, defendants CHIU, NICA, LAM, TRAN,
LIU, ABARYAN, GASTELUM-SANCHEZ, GASTELUM-BENITEZ, MANDARIC, TOMCIC,
VORACHACK, WHITMORE, JOE, and CUMMINGS, and others known and unknown
to the Grand Jury, committed various overt acts in Los Angeles
County, Orange County, and Ventura County, within the Central
District of California, in the country of Canada, and elsewhere,
including, but not limited to, Overt Acts 1-84, as set forth in Count
One, which are re-alleged and incorporated here.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU AND ABARYAN]

On or about February 21, 2018, in Ventura County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet," and ASHOT ABARYAN, aiding and abetting each other, knowingly and intentionally distributed at least five kilograms, that is, approximately 92.2 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU AND ABARYAN]

On or about February 21, 2018, in Ventura County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet," and ASHOT ABARYAN, aiding and abetting each other, knowingly and intentionally distributed at least one kilogram, that is, approximately 1.01 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU, NICA, GASTELUM-SANCHEZ, AND GASTELUM-BENITEZ]

On or about August 28, 2018, in Los Angeles County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent"; CRISTIAN RAUL GASTELUM-SANCHEZ; and RAUL ARTURO GASTELUM-BENITEZ; aiding and abetting each other, knowingly and intentionally distributed at least five kilograms, that is, approximately 24.12 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU, NICA, GASTELUM-SANCHEZ, AND GASTELUM-BENITEZ]

On or about August 28, 2018, in Los Angeles County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent"; CRISTIAN RAUL GASTELUM-SANCHEZ; and RAUL ARTURO GASTELUM-BENITEZ; aiding and abetting each other, knowingly and intentionally distributed at least one kilogram, that is, approximately eight kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

1

COUNT SEVEN

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

3

[DEFENDANTS CHIU, VORACHACK, AND JOE]

4
On or about February 20, 2019, in Orange County, within the

5
Central District of California, defendants VINCENT CHIU, also known

6
as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden,"

7
"TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and

8
"Immortalplanet"; KHONSAVANH VORACHACK, aka "Buddy" and "Kevin"; and

9
First Name Unknown Last Name Unknown ("FNU LNU"), aka "Joe" and

10
"Canadafriend"; aiding and abetting each other, knowingly and

11
intentionally distributed 3,4-Methylenedioxyamphetamine ("MDMA" or

12
"ecstasy"), a Schedule I controlled substance.

13

14

A TRUE BILL

15

16
/s/

17
Foreperson

18
NICOLA T. HANNA
United States Attorney

19

20
*Brandon Fox*

21
BRANDON D. FOX
Assistant United States Attorney

22
Chief, Criminal Division

23
CAROL A. CHEN
Assistant United States Attorney

24
Chief, International Narcotics,
  Money Laundering, and Racketeering

25
  Section

26
VICTORIA A. DEGTYAREVA
Assistant United States Attorney

27
International Narcotics, Money
  Laundering, and Racketeering Section

28