2019 OCT -8 PM 3:45

FILED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 19-393(A)-JAK |
| Plaintiff, | F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T |
| v. | |
| VINCENT YEN TEK CHIU,<br>  aka "El Chino,"<br>    "Chase,"<br>    "Tiger,"<br>    "TigerOfSweden,"<br>    "TigerOfMexico,"<br>    "ControllerCard,"<br>    "Thomas,"<br>    "Auctioned," and<br>    "Immortalplanet,"<br>FNU LNU,<br>  aka "Nica,"<br>    "SpeedShift," and<br>    "themagnificent,"<br>ANTHONY LOUIS LAM,<br>  aka "Jonny" and<br>    "Mike,"<br>THANH HAI TRAN,<br>  aka "Thomas,"<br>HENRY LIU,<br>  aka "Randy,"<br>ASHOT ABARYAN,<br>CRISTIAN RAUL GASTELUM-SANCHEZ,<br>RAUL ARTURO GASTELUM-BENITEZ,<br>ZLATKO MANDARIC,<br>BOJAN TOMCIC,<br>KHONSAVANH VORACHACK,<br>  aka "Buddy" and<br>    "Kevin," | [21 U.S.C. § 846: Conspiracy to Distribute, and to Possess with Intent to Distribute, Controlled Substances; 21 U.S.C. § 963: Conspiracy to Export Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C): Distribution of and Possession with Intent to Distribute of Controlled Substances; 18 U.S.C. § 2(a): Aiding and Abetting] |

```
MARLENE WHITMORE,
RICKY KORASAK,
  aka "Joe" and
     "Canadafriend," and
FNU LNU,
  aka "Andrea Cummings,"

          Defendants.
```

The Grand Jury charges:

## COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about July 2, 2019, in Los Angeles County, Orange County, and Ventura County, within the Central District of California, in the country of Canada, and elsewhere, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent" ("NICA"); ANTHONY LOUIS LAM, aka "Jonny" and "Mike"; THANH HAI TRAN, aka "Thomas"; HENRY LIU, aka "Randy"; ASHOT ABARYAN; CRISTIAN RAUL GASTELUM-SANCHEZ; RAUL ARTURO GASTELUM-BENITEZ; ZLATKO MANDARIC; BOJAN TOMCIC; KHONSAVANH VORACHACK, aka "Buddy" and "Kevin"; MARLENE WHITMORE; RICKY KORASAK, aka "Joe" and "Canadafriend"; and FNU LNU, aka "Andrea Cummings" ("CUMMINGS"); and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

1.   at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II); and

2.   3,4-Methylenedioxyamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendants CHIU and NICA, and others known and unknown, would arrange to purchase bulk quantities of cocaine in the United States for importation into Canada for re-sale in exchange for currency or bulk quantities of MDMA.

2.   Defendants CHIU and KORASAK, and others known and unknown, would arrange for the transportation of MDMA from Canada into the United States in exchange for cocaine.

3.   Defendants CHIU, NICA, KORASAK, and CUMMINGS, and others known and unknown, would arrange for the transportation of cocaine from the United States to Canada for further distribution.

4.   Defendants CHIU and NICA, and others known and unknown, would provide code names, telephone numbers, and serial numbers on bills of currency to co-conspirators to use as a "token" for identification purposes during the exchange of controlled substances in the United States and during the exchange of currency in Canada as payment for the controlled substances.

5.    Defendant LIU and others known and unknown would test the quality of the cocaine in the United States that would eventually be transported to Canada for further distribution.

6.    Defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ, and others known and unknown, would deliver cocaine to co-conspirators in the United States for eventual transportation to Canada for further distribution.

7.    Defendants LAM, ABARYAN, MANDARIC, TOMCIC, VORACHACK, and WHITMORE, and others known and unknown, would pick up cocaine from co-conspirators in the United States for eventual transportation to Canada for further distribution.

8.    Defendant VORACHACK and others known and unknown would deliver MDMA which had been transported from Canada to co-conspirators in the United States for further distribution.

9.    Defendants CHIU and TRAN, and others known and unknown, would deliver currency to co-conspirators in Canada as payment for controlled substances, which had been exchanged in the United States.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants CHIU, NICA, LAM, TRAN, LIU, ABARYAN, GASTELUM-SANCHEZ, GASTELUM-BENITEZ, MANDARIC, TOMCIC, VORACHACK, WHITMORE, KORASAK, and CUMMINGS, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, Orange County, and Ventura County, within the Central District of California, in the country of Canada, and elsewhere, including, but not limited to, the following:

Attempted Purchase of 50 Kilograms of Cocaine for Resale

1.   On or about January 18, 2018, using coded language in a series of text messages, defendant CHIU arranged to meet with an individual he believed to be a money courier, but who was, in fact, Undercover Agent 1, in Langley, British Columbia, Canada, in order to deliver payment for 50 kilograms of cocaine, which Undercover Agent 1's associate was tasked with delivering to defendant CHIU's associate in the Los Angeles, California area for further distribution in Canada.

2.   On or about January 19, 2018, using coded language in a series of text messages, defendant CHIU agreed to provide Undercover Agent 1 $963,300 in Canadian currency for 50 kilograms of cocaine.

3.   On or about January 19, 2018, in Compton, California, a co-conspirator, acting on behalf of defendant CHIU, met with an individual he believed to be a drug courier, but who was in fact Undercover Agent 2, in order to pick up 50 kilograms of cocaine.

4.   On or about January 19, 2018, in Langley, British Columbia, Canada, defendant CHIU and a co-conspirator met with Undercover Agent 1 in order to coordinate the exchange of cash and cocaine between defendant CHIU's organization and Undercover Agent 1's organization.

Payment of Approximately $100,000 in Canadian Currency as Down
Payment for Cocaine

5.   On or about January 21, 2018, using coded language in a text message, defendant CHIU told Undercover Agent 1 that he needed a total of 150 kilograms of cocaine for further distribution in Canada.

6.   On or about January 23, 2018, using coded language in a text message, defendant CHIU offered to give Undercover Agent 1's

organization $100,000 in Canadian currency as a down payment for 50 kilograms of cocaine.

7. On or about January 26, 2018, using coded language in a text message, defendant CHIU told Undercover Agent 1 that he had arranged to meet Undercover Agent 1's associate the following day to give the associate $100,000 in Canadian currency as down payment for 50 kilograms of cocaine.

8. On or about January 27, 2018, using coded language in a text message, defendant CHIU told Undercover Agent 1 that he had missed the meeting with Undercover Agent 1's associate during which he was supposed to give the associate $100,000 in Canadian currency.

9. On or about February 1, 2018, in Burnaby, British Columbia, Canada, a co-conspirator, acting on behalf of defendant CHIU, met with an individual he believed to be Undercover Agent 1's associate, but who was, in fact, Undercover Agent 3, and gave Undercover Agent 3 approximately $99,070 in Canadian currency and $20 in U.S. currency as down payment for 50 kilograms of cocaine.

10. On or about February 14, 2018, using coded language in a text message, defendant CHIU asked Undercover Agent 1 if Undercover Agent 1 could deliver cocaine to CHIU's associate in Seattle, Washington for eventual transportation to Canada, where it would be resold.

11. On or about February 18, 2018, using coded language in a text message, defendant CHIU told Undercover Agent 1 that he was trying to find a courier who could pick up cocaine from Undercover Agent 1's organization.

6

<u>Seizure of Approximately 93 Kilograms of Cocaine and Heroin</u>

12.  On or about February 20, 2018, in Compton, California, defendant ABARYAN met a co-conspirator at a warehouse to conduct a drug transaction.

13.  On or about February 21, 2018, in Ventura, California, defendant ABARYAN possessed with the intent to distribute approximately 92.2 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 1.01 kilograms of a mixture and substance containing a detectable amount of heroin.

14.  On or about February 23, 2018, using coded language in a text message, defendant CHIU told Undercover Agent 1 that law enforcement officers seized cocaine from defendant ABARYAN, who was working as a courier for defendant CHIU.

15.  On or about May 2, 2018, using coded language in a series of text message, defendant CHIU asked Undercover Agent 1 if Undercover Agent 1's organization could provide 50 kilograms of cocaine to defendant CHIU for further distribution in Canada.

<u>Attempted Purchase of 32 Kilograms of Cocaine for Distribution</u>

16.  On or about May 25, 2018, using coded language in a series of text messages, defendant CHIU ordered from an individual he believed to be Undercover Agent 1's boss, but who was, in fact, cooperating with law enforcement ("CHS1"), 70 kilograms of cocaine for further distribution in Canada.

17.  On or about May 25, 2018, using coded language in a text message, defendant CHIU asked CHS1 if his courier could pick up 30 kilograms of cocaine and then pick up the remaining 40 kilograms of cocaine soon after.

7

18. On or about May 26, 2018, using coded language in a text message, defendant CHIU told CHS1 that his courier would transport the cocaine he received from CHS1's organization from the United States to Alberta, Canada.

19. On or about May 26, 2018, using coded language in a text message, defendant CHIU told CHS1 that he would be ready to provide payment for cocaine to CHS1's organization in Vancouver.

20. On or about May 28, 2018, using coded language in a text message, defendant CHIU told CHS1 that he had arranged to meet with CHS1's associate the following day to discuss the upcoming drug transaction.

21. On or about May 29, 2018, in Burnaby, British Columbia, Canada, defendant CHIU met with an individual he believed to be CHS1's associate, but who was, in fact, Undercover Agent 4, to discuss payment for the cocaine CHS1's organization was scheduled to deliver to defendant CHIU's organization for further distribution in Canada.

22. On or about May 31, 2018, using coded language in a text message, defendant CHIU instructed CHS1 to make sure that the cocaine was wrapped twice in heat-sealed plastic wrapping, and told CHS1 to have CHS1's drug courier get a new telephone number for each drug delivery.

23. On or about June 3, 2018, using coded language in a series of text messages, defendant CHIU offered to pay CHS1 $1,375,146 in Canadian currency for 55 kilograms of cocaine because he had already given CHS1's organization approximately $100,000 in Canadian currency as a down payment.

24.  On or about June 4, 2018, using coded language in a text message, defendant CHIU told CHS1 that he would give CHS1's associate half of the payment owed for 55 kilograms of cocaine.

25.  On or about June 4, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that the drug transaction had not been completed because defendant CHIU did not have the cash payment ready to be delivered to CHS1's associate in Vancouver, but offered to deliver payment in Mexico.

26.  On or about June 4, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that he had given CHS1's organization $100,000 in Canadian currency as a down payment to show that he was acting in good faith in his ongoing negotiations with CHS1.

27.  On or about June 15, 2018, using coded language in a text message, defendant CHIU told CHS1 that he wanted to purchase only 40 kilograms of cocaine for further distribution in Canada.

28.  On or about June 15, 2018, using coded language in a text message, defendant CHIU asked a co-conspirator if the co-conspirator had a worker who could pick up cocaine on defendant CHIU's behalf in the Los Angeles, California area.

29.  On or about June 18, 2018, using coded language in a text message, defendant CHIU sent CHS1 a code name, a coded phone number, and a serial number on a bill of currency for a co-conspirator who was to pick up cocaine from CHS1's organization on behalf of defendant CHIU.

30.  On or about June 20, 2018, using coded language in a text message, defendant CHIU told CHS1 that he would deliver approximately

$665,000 in Canadian currency to CHS1's organization the following day as a partial payment for cocaine.

31.  On or about June 21, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator asking if the co-conspirator could order an additional 60 kilograms of high quality cocaine for $20,500 per kilogram.

32.  On or about June 21, 2018, in Vancouver, defendant CHIU met with Undercover Agent 3 and Undercover Agent 4, who were posing as CHS1's associates, to give Undercover Agent 3 and Undercover Agent 4 payment for cocaine, but then refused to provide the payment.

33.  On or about June 21, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator warning defendant CHIU that the co-conspirator believed CHS1 was working for the Drug Enforcement Administration.

<u>Test of Cocaine Sample to Ensure Quality</u>

34.  On or about July 10, 2018, using coded language in a text message, defendant CHIU told CHS1 that he wanted to try again to purchase cocaine from CHS1's organization for further distribution in Canada.

35.  On or about July 12, 2018, using coded language in a series of text messages, defendant CHIU told CHS1 that he wanted to obtain approximately 30 kilograms of high quality cocaine from CHS1's organization.

36.  On or about July 13, 2018, using coded language in a series of text messages, defendant CHIU asked CHS1 if defendant CHIU's associate could test one kilogram of cocaine from CHS1's organization to ensure that it was high quality.

37.   On or about July 14, 2018, using coded language in a text message, defendant CHIU gave CHS1 a code name, a coded telephone number, and a serial number on a bill of currency for defendant LIU, who would test cocaine from CHS1's organization.

38.   On or about July 17, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU would allow CHS1's associate to count the payment for cocaine in Vancouver while CHS1's associate in the Los Angeles, California area delivered cocaine to defendant CHIU's associate, but defendant CHIU would not release the payment to CHS1's associate until the cocaine delivery was completed.

39.   On or about July 18, 2018, in West Covina, California, defendant LIU met with an individual he believed to be CHS1's associate, but who was, in fact, cooperating with law enforcement ("CHS2"), in order to test a sample of cocaine on behalf of defendant CHIU.

40.   On or about July 18, 2018, using coded language in a text message, defendant CHIU confirmed the serial number that defendant LIU was supposed to use when he met with CHS1's associate to test a sample of cocaine.

41.   On or about July 18, 2018, using coded language in a text message, defendant CHIU asked CHS1 how much cocaine CHS1 had and told CHS1 that defendant CHIU could purchase 30 kilograms of cocaine at that moment.

42.   On or about July 18, 2018, using coded language in a series of text messages, defendant CHIU explained to CHS1 that defendant CHIU thought CHS1's associate would give defendant LIU one kilogram

11

1  of cocaine to take home to test because defendant LIU was not able to

2  test on the spot whether the sample of cocaine was high quality.

3      43.   On or about July 18, 2018, using coded language in a text

4  message, defendant CHIU asked CHS1 to guarantee that the cocaine

5  CHS1's organization would sell to defendant CHIU would be high

6  quality.

7      44.   On or about July 20, 2018, during a recorded telephone

8  call, defendant CHIU told CHS1 (who was posing as an employee of

9  CHS1) that when defendant LIU tested a sample of cocaine provided by

10  CHS1's associate, the brand of cocaine was not what defendant CHIU

11  expected.

12      Purchase of Approximately 33 Kilograms of Sham Cocaine for Resale

13      45.   On or about July 22, 2018, using coded language in a text

14  message, defendant CHIU told Undercover Agent 1 that defendant CHIU

15  would give Undercover Agent 1's organization $355,244 in Canadian

16  currency as an upfront payment for a cocaine delivery.

17      46.   On or about July 23, 2018, using coded language in a text

18  message, defendant CHIU gave Undercover Agent 1 a code name, a coded

19  telephone number, and a serial number on a bill of currency for

20  defendant LAM, who was to pick up cocaine from Undercover Agent 1's

21  associate in the Los Angeles, California area on behalf of defendant

22  CHIU.

23      47.   On or about July 23, 2018, using coded language in a text

24  message, defendant CHIU gave Undercover Agent 1 a code name and a

25  coded telephone number for defendant TRAN, who was to deliver payment

26  for cocaine in Vancouver.

27      48.   On or about July 24, 2018, in Burnaby, British Columbia,

28  Canada, defendant TRAN met with Undercover Agent 3, who was posing as

Undercover Agent 1's associate, and gave Undercover Agent 3 approximately $355,110 in Canadian currency as an upfront payment for cocaine, on behalf of defendant CHIU.

49.   On or about July 26, 2018, in Pomona, California, defendant LAM met with an individual he believed was Undercover Agent 1's associate, but who was, in fact, cooperating with law enforcement ("CHS3"), to pick up approximately 33 kilograms of a substance defendant LAM believed to be cocaine, on behalf of defendant CHIU.

50.   On or about July 26, 2018, in Los Angeles, California, defendant LAM possessed with the intent to distribute approximately 33 kilograms of a substance he believed to be cocaine.

51.   On or about July 26, 2018, in Burnaby, British Columbia, Canada, defendants CHIU and TRAN met with Undercover Agent 3, who was posing as Undercover Agent 1's associate, and gave Undercover Agent 3 approximately $355,000 in Canadian currency as payment for the suspected cocaine defendant LAM picked up.

52.   On or about July 27, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU's co-conspirators asked for their money back because law enforcement officers seized what defendant CHIU believed was 33 kilograms of cocaine from defendant LAM.

53.   On or about July 27, 2018, using coded language in a text message, defendant CHIU asked CHS1 to return half of the cash defendant CHIU had given to Undercover Agent 3 as payment for cocaine until defendant CHIU received a police report to verify that 33 kilograms of cocaine had been seized from defendant LAM.

54.   On or about July 30, 2018, using coded language in a text message, defendant CHIU complained to a co-conspirator that CHS1

refused to return any money until CHS1 saw proof that the cocaine had been seized by law enforcement.

55. On or about August 2, 2018, using coded language in a text message, defendant CHIU relayed a message from a co-conspirator who warned defendant CHIU that defendant CHIU should be careful when trying to find information about defendant LAM's arrest because there may be a larger investigation into their organization.

56. On or about August 8, 2018, using coded language in a text message, defendant CHIU told CHS1 that he owed his co-conspirators $400,000 for the seized cocaine, and said that defendant CHIU could sell enough cocaine to pay back the money owed if CHS1 could provide the cocaine to defendant CHIU.

57. On or about August 9, 2018, using coded language in a text message, defendant CHIU told CHS1 that defendant CHIU had a drug buyer who would pre-pay for 20 kilograms of cocaine at a time for a total of 100 kilograms of cocaine.

58. On or about August 9, 2018, using coded language in a text message, defendant CHIU told a co-conspirator that CHS1 did not want to return payment until CHS1 had proof that CHS1's organization was at fault for the seizure of cocaine from defendant LAM.

59. On or about August 23, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS1 (who was posing as an employee of CHS1) that CHS1's organization had to return half of the payment for the cocaine seized from defendant LAM, and that defendant CHIU wanted to continue conducting drug trafficking business with CHS1's organization.

## Seizure of 55 Kilograms of Cocaine and Heroin

60.  On or about August 10, 2018, using coded language in a series of text message, defendant NICA relayed a message from defendant CHIU that defendant CHIU needed contact information and a serial number for an individual in Los Angeles, California who would help defendant CHIU arrange pick-ups and drop offs of controlled substances.

61.  On or about August 15, 2018, using coded language during a recorded telephone call, defendant CHIU told an individual he believed was a drug trafficker, but who was, in fact, cooperating with law enforcement ("CHS4"), to send defendant CHIU the serial number on a bill of currency for use during a drug transaction.

62.  On or about August 16, 2018, using coded language during a recorded telephone call, defendant CHIU told CHS4 that defendant CHIU's associate would call CHS4 to arrange a time to drop off cocaine to CHS4.

63.  On or about August 27, 2018, using coded language during a recorded telephone call, a co-conspirator, acting on behalf of defendant CHIU, told CHS4 that they would meet the following day to drop off controlled substances to CHS4 so that CHS4 could deliver the controlled substance to defendant CHIU's organization.

64.  On or about August 28, 2018, in Baldwin Park, California, defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ distributed approximately 24.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a detectable amount of heroin to CHS4.

65.   On or about August 28, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU asking how many kilograms of controlled substances defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ had distributed to CHS4.

66.   On or about August 28, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that defendant CHIU's drug courier would pick up the controlled substances which defendants GASTELUM-SANCHEZ and GASTELUM-BENITEZ had distributed to CHS4 the following week.

67.   On or about September 3, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that the same group that had distributed controlled substances to CHS4 on August 28, 2018 needed to distribute another 24 kilograms of controlled substances; defendant NICA further relayed that the additional 24 kilograms would also be delivered to defendant CHIU's courier.

68.   On or about September 6, 2018, in Baldwin Park, California, two co-conspirators distributed approximately 23 kilograms of a mixture and substance containing a detectable amount of cocaine to CHS3, who was posing as a drug courier.

69.   On or about September 10, 2018, using coded language in a text message, defendant NICA relayed a message from defendant CHIU that the organization in Los Angeles should get ready to drop off 55 kilograms of controlled substances to defendant CHIU's courier.

70.   On or about September 10, 2018, in Bakersfield, California, defendants MANDARIC and TOMCIC obtained approximately 47.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a

detectable amount of heroin from CHS3 for the purpose of further distributing the controlled substances to defendant CHIU's organization in Canada.

71.   On or about September 11, 2018, in Barstow, California, defendants MANDARIC and TOMCIC possessed with the intent to distribute approximately 47.12 kilograms of a mixture and substance containing a detectable amount of cocaine and approximately 8 kilograms of a mixture and substance containing a detectable amount of heroin.

Exchange of 24 Kilograms of MDMA for 12 Kilograms of Sham Cocaine

72.   On or about January 23, 2019, using coded language during a recorded telephone call, defendant CHIU offered to distribute MDMA to CHS1's organization in exchange for cocaine.

73.   On or about January 31, 2019, using coded language in a text message, defendant CHIU confirmed to CHS1 that he would send 24 kilograms of MDMA to CHS1.

74.   On or about February 6, 2019, using coded language in a text message, defendant CHIU told CHS1 that his co-conspirators would call CHS1's associate to arrange the delivery of MDMA.

75.   On or about February 7, 2019, using coded language in a recorded telephone call, defendant KORASAK told Undercover Agent 1 that defendant VORACHACK would deliver MDMA to Undercover Agent 1 on Monday or Tuesday of that week in the Anaheim, California area.

76.   On or about February 10, 2019, using coded language in a recorded telephone call, defendant KORASAK told Undercover Agent 1 that defendant VORACHACK was going to be delayed in delivering MDMA to Undercover Agent 1.

77.   On or about February 18, 2019, using coded language in a recorded telephone call, defendant KORASAK told Undercover Agent 1 that defendant VORACHACK would arrive in the Anaheim, California area that day and would be ready to deliver MDMA to Undercover Agent 1 the following day.

78.   On or about February 18, 2019, using coded language during a recorded telephone call, defendant VORACHACK told Undercover Agent 1 that he (defendant VORACHACK) had 24 kilograms of MDMA to deliver to Undercover Agent 1 in exchange for 12 kilograms of cocaine.

79.   On or about February 18, 2019, using coded language in a recorded telephone call, defendant KORASAK asked Undercover Agent 1 if Undercover Agent 1 would deliver 12 kilograms of cocaine to defendant VORACHACK in exchange for MDMA.

80.   On or about February 19, 2019, using coded language in a text message, defendant CHIU sent CHS1 a serial number on a bill of currency for defendant VORACHACK to use to arrange the exchange of MDMA and cocaine.

81.   On or about February 20, 2019, using coded language during a recorded telephone call, defendant VORACHACK agreed to meet later that day with an individual he believed to be CHS1's associate, but who was, in fact, an Undercover Agent 5, in order to exchange MDMA for cocaine.

82.   On or about February 20, 2019, in Orange, California, defendant VORACHACK distributed approximately 23.92 kilograms of MDMA to Undercover Agent 5 and another undercover agent in exchange for approximately 12 kilograms of a substance that defendant VORACHACK believed was cocaine.

83.  On or about February 20, 2019, in Orange, California, defendant VORACHACK possessed with the intent to distribute approximately 12 kilograms of a substance he believed was cocaine.

84.  On or about February 20, 2019, using coded language in a recorded telephone call, defendant KORASAK asked defendant VORACHACK, who had agreed to cooperate with law enforcement, how many kilograms of cocaine he (defendant VORACHACK) had picked up from Undercover Agent 5, to which defendant VORACHACK responded that it was 12 kilograms.

85.  On or about February 23, 2019, using coded language in a text message, defendant CUMMINGS directed defendant WHITMORE to deliver $3,000 to defendant VORACHACK in exchange for 12 kilograms of cocaine.

86.  On or about February 23, 2019, in Bellingham, Washington, defendant WHITMORE received approximately 12 kilograms of a substance she believed to be cocaine from defendant VORACHACK, who had agreed to cooperate with law enforcement, in exchange for $3,000.

87.  On or about February 23, 2019, using coded language in a text message, defendant CUMMINGS told defendant WHITMORE that she should have picked up 12 kilograms of cocaine, to which defendant WHITMORE confirmed that she picked up 12 kilograms.

88.  On or about February 23, 2019, in Edison, Washington, defendant WHITMORE possessed with the intent to distribute approximately 12 kilograms of a substance she believed was cocaine.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[21 U.S.C. § 963]

[ALL DEFENDANTS]

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about July 2, 2019, in Los Angeles County, Orange County, and Ventura County, within the Central District of California, in the country of Canada, and elsewhere, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet" ("CHIU"); First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent" ("NICA"); ANTHONY LOUIS LAM, aka "Jonny" and "Mike" ("LAM"); THANH HAI TRAN, aka "Thomas" ("TRAN"); HENRY LIU, aka "Randy" ("LIU"); ASHOT ABARYAN ("ABARYAN"); CRISTIAN RAUL GASTELUM-SANCHEZ ("GASTELUM-SANCHEZ"); RAUL ARTURO GASTELUM-BENITEZ ("GASTELUM-BENITEZ"); ZLATKO MANDARIC ("MANDARIC"); BOJAN TOMCIC ("TOMCIC"); KHONSAVANH VORACHACK, aka "Buddy" and "Kevin" ("VORACHACK"); MARLENE WHITMORE ("WHITMORE"); RICKY KORASAK, aka "Joe" and "Canadafriend" ("KORASAK"); and FNU LNU, aka "Andrea Cummings" ("CUMMINGS"); and others known and unknown to the Grand Jury, conspired with each other to knowingly and intentionally export from the United States at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 953(a), 960(a)(1), (b)(1)(B)(ii).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

     The object of the conspiracy was to be accomplished, in substance, through the means set forth in Section B, Paragraphs 1 through 9, of Count One, which are re-alleged and incorporated here.

C.   OVERT ACTS

     In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants CHIU, NICA, LAM, TRAN, LIU, ABARYAN, GASTELUM-SANCHEZ, GASTELUM-BENITEZ, MANDARIC, TOMCIC, VORACHACK, WHITMORE, KORASAK, and CUMMINGS, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, Orange County, and Ventura County, within the Central District of California, in the country of Canada, and elsewhere, including, but not limited to, Overt Acts 1-88, as set forth in Count One, which are re-alleged and incorporated here.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU AND ABARYAN]

On or about February 21, 2018, in Ventura County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet," and ASHOT ABARYAN, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 92.2 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU AND ABARYAN]

On or about February 21, 2018, in Ventura County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet," and ASHOT ABARYAN, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute at least one kilogram, that is, approximately 1.01 kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU, NICA, GASTELUM-SANCHEZ, AND GASTELUM-BENITEZ]

On or about August 28, 2018, in Los Angeles County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent"; CRISTIAN RAUL GASTELUM-SANCHEZ; and RAUL ARTURO GASTELUM-BENITEZ; aiding and abetting each other, knowingly and intentionally distributed at least five kilograms, that is, approximately 24.12 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU, NICA, GASTELUM-SANCHEZ, AND GASTELUM-BENITEZ]

On or about August 28, 2018, in Los Angeles County, within the Central District of California, defendants VINCENT YEN TEK CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; First Name Unknown Last Name Unknown ("FNU LNU"), aka "Nica," "SpeedShift," and "themagnificent"; CRISTIAN RAUL GASTELUM-SANCHEZ; and RAUL ARTURO GASTELUM-BENITEZ; aiding and abetting each other, knowingly and intentionally distributed at least one kilogram, that is, approximately eight kilograms, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS CHIU, VORACHACK, AND KORASAK]

On or about February 20, 2019, in Orange County, within the Central District of California, defendants VINCENT CHIU, also known as ("aka") "El Chino," "Chase," "Tiger," "TigerOfSweden," "TigerOfMexico," "ControllerCard," "Thomas," "Auctioned," and "Immortalplanet"; KHONSAVANH VORACHACK, aka "Buddy" and "Kevin"; and RICKY KORASAK, aka "Joe" and "Canadafriend"; aiding and abetting each other, knowingly and intentionally distributed 3,4-Methylenedioxyamphetamine, a Schedule I controlled substance.

A TRUE BILL

/s/

_____
Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics,
  Money Laundering, and Racketeering
  Section

VICTORIA A. DEGTYAREVA
Assistant United States Attorney
Cyber and Intellectual Property Crimes
  Section

26